IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**DEREK A. MILLER**                                                                            **PETITIONER**

**v.**                                                      **No. 1:12cr159-MPM**

**UNITED STATES OF AMERICA**                                       **RESPONDENT**

**MEMORANDUM OPINION**

This matter comes before the court on the motion of Derek A. Miller to vacate, set aside, or correct his sentence under 28 U.S.C. §2255. The government has responded to the motion, and the matter is ripe for resolution.

**Facts and Procedural Posture**

Petitioner Miller was investigated by law enforcement for operating a large drug trafficking organization in North Mississippi. Sometime around 2010, Miller's acquaintance, Yulande Scott, introduced Miller to an individual known as "Ocho" in Houston, Texas. ECF Doc. 204, pg. 15. Miller began purchasing cocaine from "Ocho" and another individual known as "Rico." *Id*. On June 28, 2011, and July 28, 2011, a confidential informant purchased approximately 54.7 and 76.2 grams of crack cocaine from Demetrius Babbit, who was supplied with the cocaine by Miller. *Id*. Thereafter, on February 3, 2012, and February 16, 2012, a confidential source purchased approximately 86.2 and 112.7 grams of crack cocaine from Jarvis Moore, who was also supplied with the cocaine by Miller. *Id*. at 15-16.

On April 25, 2012, a valid wiretap was authorized for Miller's cell phone. *Id*. at 16. Based on information obtained through the wiretap, law enforcement was able to intercept a FedEx package that Scott had shipped to Miller and obtain a search warrant for that package. *Id*.

The package held a backpack containing approximately 4.475 kilograms of a substance that was chemically determined to be powder cocaine. *Id*. The investigation of Miller ultimately revealed that the overall scope of the conspiracy involved over 500 grams of powder cocaine and 28 grams of crack cocaine. *Id*. at 17.

On May 8, 2012, law enforcement intercepted another package sent by co-conspirator Brakeia Pannell to Miller at his apartment in Houston. *Id*. That package contained $66,100.00 in cash that was to be used to purchase more cocaine. *Id*. On May 9, 2012, a search warrant was executed on 115 Wayside Drive in Tupelo, Mississippi, which was Miller's mother's house. *Id*. Approximately $20,000.00 in cash and two (2) firearms were recovered. *Id*. A Hi-Point 9 mm pistol was found in the same dresser drawer as the $20,000.00 and a .38 caliber firearm was found in another drawer of the dresser. ECF doc. 250, pg. 9. The 9 mm handgun was reported stolen from Alcorn County. *Id*. at 12. In addition, a safety deposit key was recovered. *Id*. at 24. Miller admitted that the $20,000.00 seized from his mother's house was, in fact, the proceeds of his drug sales. ECF doc. 251, pg. 77. Miller also admitted that the 9 mm was his gun and he placed it in the dresser drawer. *Id*.

Following the search, intercepted phone conversations revealed that Miller had large amounts of cash in various safe deposit boxes. ECF doc. 204, pg. 17. A search warrant was executed and $169,000.00 was recovered from safe deposit box 97 at the Belden, Mississippi branch of Renasant Bank, which was in Miller's sister's name. *Id* at 17-18. On May 10, 2012, a search of safe deposit box 90 at the Barnes Crossing location of Regions Bank in Tupelo, Mississippi, which was registered in Miller's name, revealed an additional $100,000.00 in cash. *Id*. at 18. Recordings of intercepted phone calls were admitted at the sentencing hearing. ECF doc. 250 pg. 27.

Miller was indicted, along with co-defendants, for: (1) one (1) count of conspiracy to possess with intent to distribute more than 500 grams of a mixture containing a detectable amount of cocaine hydrochloride (powder cocaine) and more than 28 grams of a substance containing a detectable amount of cocaine base (crack cocaine) (Count I), and (2) three (3) counts of money laundering (Counts II, III, and IV). ECF doc. 1. Miller was arrested on January 29, 2013, and *Mirandized*. ECF doc. 204, pg. 19. Miller waived his *Miranda* rights and provided law enforcement with a FedEx package containing approximately 600 grams of powder cocaine and 11 grams of crack cocaine. *Id*. Miller admitted that he committed the crimes with which he was charged and pleaded guilty to Counts I and II. *Id*. at 19-20. In addition, Miller agreed to forfeit his interest in the money that was seized. *Id*. at 20.

On January 24, 2014, Miller pleaded guilty to Counts I and II of the indictment. ECF doc. 175. On June 19, 2014, Miller was sentenced to serve a term of 160 months on Count I and II to be served concurrently, and three (3) years of supervised release on Counts I and II to also run concurrently. ECF doc. 237. Further Counts III and IV of the indictment were dismissed. *Id*. Miller appealed his plea and sentence to the Fifth Circuit Court of Appeals, which affirmed this court's judgment. *U.S. v. Miller*, 598 Fed. Appx. 284 (5th Cir. 2015). Thereafter, Miller filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. ECF doc. 275.

**Scope of §2255 Review**

There are four grounds upon which a federal prisoner may seek to vacate, set aside, or correct his sentence: (1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose the sentence; (3) that the sentence exceeds the statutory maximum sentence; or (4) that the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255; *see United States v. Cates*, 952 F.2d 149, 151 (5th

Cir.1992). The scope of relief under § 2255 is the same as that of a petition for a writ of *habeas corpus*. *Cates*, 952 F.2d at 151.

A defendant seeking relief under 28 U.S.C. §2255 may not do so to raise issues that could have been raised on appeal. *United States v. Walling*, 982 F.2d 447, 448-449 (10th Cir. 1992). A petitioner may not raise constitutional issues for the first time on post-conviction collateral review unless he shows cause for failing to raise the issue on direct appeal and actual prejudice resulting from the error. *United States v. Pierce*, 959 F.2d 1297, 1301 (5th Cir. 1992), *cert. denied*, 506 U.S. 1007 (1992); *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991). The burden of showing "cause," an "objective factor external to the defense," rests with the petitioner. *McCleskey v. Zant*, 111 S.Ct. 1454, 1470 (1991). No other types of errors may be raised on collateral review unless the petitioner demonstrates that the error could not have been raised on direct appeal, and if not corrected, would result in a complete miscarriage of justice. *Pierce*, 959 F.2d at 1301; *Shaid*, 937 F.2d at 232. Further, if a claim is raised and considered on direct appeal, a defendant is may not raise the issue in a later collateral attack. *Moore v. United States*, 598 F.2d 439, 441 (5th Cir. 1979).

**Miller's §2255 Claims**

In the instant §2255 motion, Miller makes the following claims for relief, which the court has restated for clarity:

    Ground One:    Ineffective assistance of trial counsel for failing to object to the court's application of non-criminal conduct for enhancements under the Sentencing Guidelines.

    Ground Two:    Ineffective assistance of trial and appellate counsel for failing to adequately argue that the proximity of the seized cash to the seized gun was not sufficient to trigger the gun enhancement under guideline §2D1.1(b)(1).

4

Ground Three: Ineffective assistance of trial counsel for failure to raise *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

Ground Four: Ineffective assistance of trial counsel for failing to challenge the application of guideline §1B1.3.

For the reasons discussed herein, Miller's claims are without merit.

**Standard for Ineffective Assistance of Counsel Claims**

The U.S. Supreme Court has ruled that claims of ineffective assistance of counsel are governed by the standard laid out in *Strickland v. Washington*, 466 U.S. 668 (1984). To merit habeas corpus relief on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-prong test set out in *Strickland, supra,* by demonstrating both constitutionally deficient performance by counsel and actual prejudice as a result of such ineffective assistance. *See also Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994) (summarizing the *Strickland* standard of review). A petitioner's failure to establish both prongs of the *Strickland* test warrants rejection of the claim. *Moawad v. Anderson*, 143 F.3d 942, 946 (5th Cir. 1998); *Bates v. Blackburn*, 805 F.2d 569, 578 (5th Cir. 1986) (overruled on other grounds).

Under the deficiency prong of the test, the petitioner must show that counsel made errors so serious that they were not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Counsel's performance is considered deficient if "it falls below an objective standard of reasonableness" as measured by professional norms. *Strickland*, 466 U.S. at 688. Judicial scrutiny of counsel's performance is highly deferential and must be considered in light of the services rendered at the time, rather than by a distorted view of 20/20 hindsight. *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988). A determination must be made of whether there is a gap between what counsel actually did and what a reasonable attorney would have done under the circumstances. *Neal v. Puckett*, 239 F.3d 683, 687 (5th Cir. 2001). Further,

"the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). Counsel's services are not evaluated in a vacuum, and all circumstances are considered in determining whether the performance was reasonable under prevailing professional standards. *Lavernia*, 845 F.2d at 498. Finally, there is a strong presumption that counsel has exercised reasonable professional judgment. *Strickland*, 466 U.S. at 689; *Martin v. McCotter*, 796 F.2d 813, 187 (5th Cir. 1986).

To prove prejudice, Petitioner must demonstrate that the result of the proceedings would have been different or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. *Strickland*, 466 U.S. at 687. Petitioner must also demonstrate a reasonable probability that, but for counsel's errors, the results of the proceeding would have been different. *Id*. at 694. *See also Mayabb v. Johnson*, 168 F.3d 863, 869 (5th Cir. 1998); *Goodwin v. Johnson*, 132 F.3d 162, 170 (5th Cir, 1998). A "reasonable probability" is one sufficient to undermine confidence in the outcome of the proceeding. *Moawad v. Anderson*, *supra*. An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Summit v. Blackburn*, 795 F.2d 1237, 1242 (5th Cir. 1986). A habeas corpus petitioner must affirmatively plead this resulting prejudice. *Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988).

> **Ground One: Ineffective assistance of trial counsel for failure to object to the alleged use of non-criminal activity to support a sentencing enhancement.**

Miller received a two (2) point enhancement for his role in the offense pursuant to §3B1.1(c) of Sentencing Guidelines, which provides for such an increase when the defendant is "an organizer, leader, manager, or supervisor in any criminal activity." Miller complains that the

court used non-criminal activity to support this enhancement and that his trial attorney was ineffective for failing to lodge an objection. For the reasons discussed herein, this claim lacks merit.

"When making factual findings for sentencing purposes, a district court 'may consider any information which bears sufficient indicia of reliability to support its probable accuracy.'" *United States v. Zuniga*, 720 F.3d 587, 591 (5th Cir. 2013), citing *United States v. Harris*, 702 F.3d 226, 230 (5th Cir.2012) (internal quotation marks and citation omitted). "Generally, a PSR bears sufficient indicia of reliability to be considered as evidence by the sentencing judge in making factual determinations." *Id*. As noted above, the two (2) point enhancement under § 3B1.1(c) is warranted when the defendant is "an organizer, leader, manager, or supervisor in any criminal activity." Further, according to the comments to Guideline §3B1.1, "[a]n upward departure may be warranted, however, in the case of a defendant who did not organize, lead, manage, or supervise another participant, but who nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization." In this case, the court was provided with ample evidence of Miller's leadership role in the drug trafficking organization.

At the change of plea hearing, the Government asserted that Miller had engaged in a drug trafficking conspiracy with, "among others, Shonta Grice, Yulande Scott, Barkeia Pannell, Jarvis Moore, Demetrius Babbitt, Heather Smith and Frederick Douglas." ECF doc.204, pp. 16-17. According to the pre-sentence report, these individuals played the following roles in the trafficking organization: Scott introduced Miller to his suppliers and helped to obtain cocaine in Texas, Pannell was Miller's girlfriend and assistant, Grice delivered the cocaine from Miller to the street dealers, Moore and Babbitt were street dealers, Douglas was a street dealer and helped

7

to deliver the cocaine from Miller to other dealers, and Smith kept a safety deposit box where she housed drug proceeds for Miller. ECF doc. 224, pg. 4.

Miller would regularly obtain cocaine from Columbian contacts in Houston, Texas, and ship the drugs to North Mississippi. *Id*. at 15. During the investigation, confidential informants made controlled drug buys from Demetrius Babbitt and Jarvis Moore *Id*. at 15-16. The investigation revealed that Babbitt and Moore were provided with the drugs by Miller. *Id*. Further, law enforcement intercepted a package that had been sent to Miller from Yulande Scott containing 4.475 kg of cocaine. *Id*. at 16. Law enforcement also intercepted a package sent by Brakeia Pannell to Miller that contained $66,100.00 in cash, which was intended to be used to purchase cocaine. *Id*. at 17. Miller admitted that he and Brakeia packaged the money and drove to the UPS store together, ECF doc. 251, pg. 74. A 9 mm gun and $20,000.00 in cash, both of which Miller admitted to owning, were found in Miller's mother's house. ECF doc. 204, pg. 17, and ECF doc. 251, pg. 77. Intercepted phone calls between Miller, his mother Rosie Smith, and his sister Heather Smith, revealed discussions of large sums of cash kept in various safe deposit boxes. ECF doc. 204 pg. 17-18. Miller admitted that he "used Heather to keep [his] drug money in her box." ECF doc. 251, pg. 78. Further, Miller admitted that the Government's recitation of his actions were correct. ECF doc. 204, pg.19.

As such, it is clear that Miller had a leadership role in this drug trafficking organization. Miller obtained the cocaine, organized the distribution of the drugs, collected proceeds from the street sales, and coordinated the laundering of those proceeds. All of this is criminal activity. Therefore, Miller was properly enhanced pursuant to §3B1.1(c) and the application of that enhancement was not based on non-criminal activity. Miller's attorney cannot be deemed constitutionally ineffective for choosing not to lodge a meritless objection to the pre-sentence

report on these grounds. *See Clark v. Collins*, 19 F. 3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering, it is the very opposite."). Miller's allegation in Ground One of the petition is without merit and is denied.

> **Ground Two: Ineffective assistance of counsel for failing to adequately challenge the gun enhancement.**

In Ground Two, Miller complains that his trial attorney failed to adequately challenge the enhancement under Sentencing Guideline §2D1.1(b)(1). This section provides for a two (2) level enhancement "[i]f a dangerous weapon (including a firearm) was possessed." §2D1.1(b)(1). Miller's attorney objected to the pre-sentence report's application of the gun enhancement, and argued against the enhancement throughout the sentencing hearing. ECF doc. 250. However, Miller asserts that his attorney should have cited to *U.S. v. Vasquez*, 874 F.2d 250, 251 (5th Cir. 1989) and *U.S. v. Siebe*, 58 F.3d 161, 162 (5th Cir. 1995) for the proposition that the gun's proximity to the money, which was admittedly earned from drug dealing, was not enough to warrant the application of §2D1.1(b)(1).

In *Vasquez*, the defendant pleaded guilty only to possession of cocaine with intent to distribute and his conspiracy charge was dropped in exchange for the plea. *Vasquez*, 874 F.2d at 251. As such, the Fifth Circuit found that the gun, which was at the defendant's home several miles away from the point of the sale where the defendant was arrested, could not be deemed "possessed" during the commission of the crime. *Id*. In *Siebe*, the defendant was a police officer who pleaded guilty to possession of cocaine with the intent to distribute and money laundering. *Siebe*, 58 F.3d at 162. In that case, the gun enhancement was applied by the district court based solely on a presumption that, because Siebe was a police officer he was armed at the time the crime was committed. *Id*. at 163. While guns were found in Siebe's home, no evidence of Siebe's drug trafficking was present in the home. *Id*. Because there was no evidence of the

9

presence of a gun other than a mere presumption, the Fifth Circuit held that the gun enhancement had been improperly applied in that case. *Id*. However, as will be discussed herein, the facts of Miller's case are distinguishable from those of *Vasquez* and *Siebe, supra*.

As noted above, a 9 mm gun and $20,000.00 in cash were found in Miller's mother's house. ECF doc. 204, pg. 17, and ECF doc. 251, pg. 77. Miller admitted that the $20,000.00 seized from his mother's house was, in fact, his and was earned through drug sales. ECF doc. 251, pg. 77. Miller also admitted that the 9 mm was his gun and he placed it in the dresser drawer. *Id*. Further, Miller admitted to boxing up $60,000.00, also proceeds of drug trafficking, at his mother's house, where the gun was found, with Pannell and shipping that money to himself in Texas. ECF doc. 251, pg. 74. He also admitted that he exchanged drug proceeds with his sister at his mother's house, where the firearm was found, in order for her to place the drug proceeds in a safe deposit box. *Id*. at 78.

The Fifth Circuit has held that application of §2D1.1(b)(1) is proper when the Government demonstrates by a preponderance of the evidence that, "the defendant personally possessed the weapon, by showing a temporal and spatial relationship of the weapon, the drug trafficking activity, and the defendant." *U.S. v. Zapata-Lara*, 615 F3d 388, 390 (5th Cir. 2010).The Fifth Circuit considered this issue on appeal and held:

> The enhancement was based on the firearm found with $20,000 in cash in a dresser drawer in a bedroom in Miller's mother's house. Regardless of whether the $20,000 was intended to be used in a subsequent drug transaction, a preponderance of the evidence plausibly established a temporal and spatial relationship between the firearm, Miller's drug dealing, and Miller. [*U.S. v. King*, 773 F.3d 48,] 52–53 [(5th Cir. 2014)].. The firearm was found in the same dresser drawer as $20,000 in drug proceeds and in the same house where Miller admitted that he gave drug proceeds to his sister to store elsewhere and packaged $66,000 in drug proceeds to be used in a subsequent drug transaction. This undisputed evidence supported the district court's implicit inference that Miller

> possessed the firearm to protect himself and his drug proceeds. *See United States v. Vasquez*, 161 F.3d 909, 912–13 (5th Cir.1998). The district court also did not clearly err in finding that Miller did not meet his burden of showing that it was clearly improbable that the firearm was related to his drug dealing. *See King*, 773 F.3d at 52–53.

*Miller*, 598 Fed. Appx. at 285. As such, the application of §2D1.1(b)(1) was supported by the evidence in this case. Further, counsel cannot be faulted for failing to cite two additional cases, which were factually distinguishable from Miller's case. In light of the above, Miller's allegation in Ground Two is without merit and is denied.

### Ground Three: Ineffective assistance of counsel for failing to cite *Apprendi* in challenging his sentence.

In Ground Three, Miller complains that trial counsel failed to cite *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 2363 (2000) in challenging his sentence. In *Apprendi*, the Supreme Court held that any fact, other than a prior conviction, that will increase the sentence beyond the statutory maximum must be determined by a jury. *Id*. at 2363. Miller appears to argue that, because of the discretion afforded federal courts under the Sentencing Guidelines, federal courts are not bound by statutory maximums. However, the Fifth Circuit has held that, "Guideline ranges based on relevant conduct and other factors" do not require a jury determination of the facts underlying that conduct or other factors. *U.S. v. Hinojosa*, 749 F.3d 407, 413 (5th Cir. 2014), *see also U.S. v. Stanford*, 805 F.3d 557, 570 (5th Cir. 2015).

In this case, under the applicable statutes, Miller faced five (5) to forty (40) years on Count I and zero (0) to twenty (20) years on Count II. *See* 21 U.S.C.A. §841(b)(1)(B) and 18 U.S.C.A. §156(a)(1)(B)(i). Miller was ultimately sentenced to a term of 160 months (13 years and 4 months) one each count, to run concurrently. ECF doc. 237. This sentence was well below the statutory maximums prescribed by law. Further, the applicable guideline range was 168

months to 210 months. ECF doc. 251, pg. 103.  As such, Miller's actual sentence was also below the minimum advisory guideline range.  As a result, *Apprendi, supra*, is not implicated in this case and counsel cannot considered constitutionally ineffective for failing to cite an inapplicable case. Therefore, Miller's allegation in Ground Three is without merit and is denied

### Ground Four: Ineffective assistance of counsel for failing to adequately challenge the length of Miller's sentence.

In Ground Four, Miller again challenges the length of his sentence arguing that his attorney failed to allege that he was denied due process because his "sentence was greater than necessary." ECF doc. 275, pg. 8. However, as discussed above, Miller was properly sentenced in this case. As such, counsel cannot be faulted for failure to raise a meritless argument. *See Clark v. Collins,* 19 F. 3d 959, 966 (5th Cir. 1994). As such, Miller's allegation in Ground Four is without merit and is denied.

### Conclusion

As discussed above, Miller's claims in Grounds One, Two, Three, and Four lack merit, and the instant motion to vacate, set aside, or correct Derek A. Miller's sentence will be denied. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this the 13th day of November, 2017.

/s/MICHAEL P. MILLS
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**